UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JERMAINE TURNER, | Case No. 5:13CV1089 |
| Petitioner, | JUDGE BENITA Y. PEARSON |
| v. | Magistrate Judge George J. Limbert |
| ALAN LAZAROFF, Warden, MANSFIELD CORRECTIONAL INSTITUTION, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Respondent. | |

Petitioner Jermaine Turner ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Stark County, Ohio Court of Common Pleas convictions for rape, kidnapping, felonious assault and disrupting public services.  *Id.*  On September 24, 2013, Respondent Alan Lazaroff, Warden of the Mansfield Correctional Institution in Mansfield, Ohio ("Respondent") filed an answer/return of writ.  ECF Dkt. #8.  On February 18, 2014, Petitioner filed a traverse.  ECF Dkt. #14.  On February 19, 2014, Respondent filed an objection to Petitioner's traverse.  ECF Dkt. #15.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

**I.    SYNOPSIS OF THE FACTS**

The Fifth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. ECF Dkt. #8-7 at 1-8.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> On September 6, 2010 at 9:21 pm, Canton Police Officers Travis Pelligrino and Anthony Ankrom were dispatched for a "trouble call."  When they arrived, they found Joanna Shollenberger on the front steps of her apartment building.  Her face was bloodied and swollen.  She had scratches on her legs and arms.  Ms. Shollenberger identified appellant as her assailant.

After the medics arrived to treat Ms. Shollenberger, Officers Ankrom and Pellegrino, with the assistance of a canine unit, went looking for appellant, who had fled the scene when he saw the first cruiser pull up. They were unable to find him.

Ms. Shollenberger was taken by ambulance to Aultman Hospital and the officers continued their investigation in her apartment. In the stairwell leading up to her apartment, as well as the apartment itself, they found blood smears and spatters on the walls. In the bathroom, they found a broken, disabled cell phone.

Ms. Shollenberger was treated at Aultman Hospital for her injuries including an orbital fracture of her eye, a left nasal bone fracture and multiple lacerations requiring stitches. Nurse Kelly Fisk, in a pain assessment done the next morning, rated Ms. Shollenberger's pain as ten on the pain scale, which would have been to her "really horrible pain." Ms. Shollenberger also reported that she was raped and a sexual assault examination (SANE) was completed.

The next morning, Ms. Shollenberger was interviewed by Detective Gary Cochran and explained the events that resulted in her injuries. Ms. Shollenberger told Detective Cochran that she had been dating appellant for about two months and they had a sexual relationship. On September 6, 2010, he invited her to a Labor Day barbeque at his sister's house. He spent the night and they spent the Labor Day sipping "4 Lokos." On the way to the party, the couple stopped at a gas station for more liquor and cigarettes. While appellant was in the store, Ms. Shollenberger was talking to a "dude" who pulled up beside her and gave her his telephone number. Ms. Shollenberger related that when appellant came out of the store, he seemed upset about her encounter.

The pair proceeded to the party and had a good time, "drinking, cooking, talking, laughing and stuff." Ms. Shollenberger drove the couple to her apartment, where they watched television and had consensual sex. When Ms. Shollenberger wanted to stop, appellant became upset, saying, "I bet if I was that ni---- you was talking to, you know, you would want to, you know, cussing and stuff, basically have sex with me if I was him, and you don't like me, and you don't care about me, and things like that." The argument escalated and Ms. Shollenberger dressed and told appellant she would take him home. Appellant pushed the dresser and knocked all the stuff off it. Appellant hit Ms. Shollenberger in the face and pushed her against the wall. He grabbed her purse out of her hand and hit her with it. Ms. Shollenberger ran into the bathroom with her cell phone and tried to call 911. Appellant kicked in the bathroom door, punched and slapped her. When she got through to 911, he grabbed the phone snapping it in half, telling her he would kill her if he went to jail.

Ms. Shollenberger kept trying to run away from the house; however appellant prevented her from leaving. He shut the windows, put a baby's gate across the bedroom door and kept punching and hitting her. Ms. Shollenberger made it down the first flight of steps, but appellant pushed her down the rest of them, grabbed her by the hair and made her go back up the steps. "I kept trying to go down the steps. He kicked me in my face several times."

Finally, appellant told Ms. Shollenberger to go lie down in the room and take her clothes off. She complied because appellant told her he was going to break her jaw, kill her kids, "things like that." Every time I made one move, he was right there...He kept hitting me."

-2-

> Appellant got on top of Ms. Shollenberger and tried to have sex; however, he could not get an erection and started throwing up in a bucket. While he was throwing up, Ms. Shollenberger kept thinking of a way to get out of the room. When appellant went into the kitchen - after placing the baby's gate across the bedroom door- Ms. Shollenberger made her escape. She grabbed her shirt and ran down the steps with appellant chasing her.
>
> Ms. Shollenberger reached the bottom of the stairs and ran into the apartment of the downstairs neighbors, Terrence McCollum and Leanna Meely. It turned out that McCollum was appellant's cousin. McCollum was sitting in the kitchen and heard somebody say, "help." He went to the door and heard a little thud and when he opened the door to investigate, Ms. Shollenberger came "bursting in." Her face looked "bad" so McCollum sent his kids to their rooms. She had blood on her hands.
>
> Mr. McCollum went to talk with his cousin, appellant, to see "what was the problem, what was going on." Appellant explained, "There was an altercation. She had disrespected him earlier that day."
>
> Mr. McCollum called 911 because he "couldn't let nothing else happen to her like that" and police officers responded. Ms. Shollenberger estimated the incident with appellant lasted about an hour.
>
> An arrest warrant was issued for appellant charging him with rape, felonious assault, kidnapping and disrupting public service. Appellant was found around December 30, 2010 and arrested. After waiving his *Miranda* rights, he agreed to an interview by Detective Cochran.
>
> Appellant expressed surprise at being accused of rape. While willing to take the fall for assault, he denied raping Ms. Shollenberger, explaining that because he was dating her, all sex they had or attempted to have was consensual. Appellant claimed he accidentally kicked Ms. Shollenberger in the eye and hit her one time, when all he meant to do was "kick my throw up on her."

ECF Dkt. #8-7 at 1-5.

## II. PROCEDURAL HISTORY

### A. State Trial Court

In its January 2011 term, the Stark County Grand Jury indicted Petitioner on one count of rape in violation of Ohio Revised Code ("ORC") § 2907.02(A)(2), one count of kidnapping in violation of ORC § 2905.01(A)(3), one count of felonious assault in violation of ORC § 2903.11(A)(1), and one count of disrupting public services in violation of ORC § 2909.04(A)(1). ECF Dkt. #8-1 at 1-2.

On May 13, 2011, a jury found Petitioner not guilty of rape, but guilty of kidnapping, felonious assault, and disrupting public services. ECF Dkt. #8-2 at 1-5.

-3-

On May 17, 2011, the trial court sentenced Petitioner to ten years of imprisonment for the kidnapping conviction, two years for felonious assault and six months for disrupting public services, with the ten years and two years to run consecutively and the six months to run concurrently, for a total of twelve years of incarceration.  ECF Dkt. #8-3 at 1-5.

### B.     Direct Appeal

On June 15, 2011, Petitioner, through counsel, filed a timely notice of appeal to the Ohio Court of Appeals for the Fifth District.  ECF Dkt. #8-4 at 1.  In his appellate brief, Petitioner asserted the following sole assignment of error:

> WHETHER THE TRIAL COURT'S FINDING OF GUILTY OF KIDNAPPING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE?

ECF Dkt. #8-5 at 1-9.  The State filed an appellate brief.  ECF Dkt. #8-6.

On January 30, 2012, the Fifth District Court of Appeals issued an opinion affirming the trial court's judgment.  ECF Dkt. #8-7 at 1-8.

### C.     Supreme Court of Ohio

On April 9, 2012, Petitioner, pro se, filed a notice of appeal and motion for leave to file a delayed appeal in the Supreme Court of Ohio explaining that he filed his appeal late because of prison overcrowding and his inability to use the prison law library.  ECF Dkt. #8-8 at 1-3; 8-9 at 1-6.  On May 23, 2012, the Ohio Supreme Court denied Petitioner's motion for a delayed appeal and dismissed his case.  ECF Dkt. #8-10 at 1.

### D.     Rule 26(B) Motion for Leave to File Delayed Application for Reopening

On May 17, 2012, Petitioner filed a Rule 26(B)(2)(C) motion pursuant to the Ohio Rules of Appellate Procedure for leave to file a delayed application for reopening his case in the Ohio appellate court.  ECF Dkt. #8-11.  He also filed a delayed motion for reopening his direct appeal pursuant to Rule 26(B) and a motion for the appointment of counsel.  ECF Dkt. #8-13 at 1.

On July 10, 2012, the Ohio appellate court issued a judgment entry holding that he failed to demonstrate good cause as required in order to warrant waiving the ninety day time limit in which to file a Rule 26(B).  ECF Dkt. #8-13 at 2-4.  The court also reviewed Petitioner's claim,

finding that although he labeled it as ineffective assistance of appellate counsel, Petitioner was merely disagreeing with the conclusions that the Ohio appellate court reached in its original affirmance of his convictions. *Id*. at 4-5.  The appellate court applied res judicata to bar consideration of the claim. *Id.* at 5-6.

### E. Supreme Court of Ohio

On August 8, 2012, Petitioner, pro se, filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #8-14.  In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

> I. PREJUDICE RESULTS WHEN A DEFENDANT IS DEPRIVED OF DUE PROCESS OF LAW, AND EQUAL PROTECTION OF THE LAW WHEN HE [] DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL.
>
> II. THE CONVICTION OF KIDNAPPING WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE STATE FAILED TO PROVE THAT APPELLANT COMMITTED A KIDNAPPING.
>
> III. THE CONVICTION OF KIDNAPPING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ECF Dkt. #8-15 at 2.  The State waived filing a memorandum in opposition.  ECF Dkt. #8-16.

On October 10, 2012, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #8-17 at 1.

### F. Motion to Merge Allied Offenses for Sentencing

On August 9, 2012, Petitioner filed a motion to merge allied offenses for sentencing in the trial court.  ECF Dkt. #8-18 at 1.  On August 21, 2012, the trial court denied the motion. ECF Dkt. #8-19 at 1.

## III.  28 U.S.C. § 2254 PETITION

On May 7, 2013, Petitioner filed the instant petition for a writ of federal habeas corpus. ECF Dkt. #1.  Petitioner raises the following ground for relief:

> GROUND ONE:
>
> The trial court finding of guilt of kidnapping was against the manifest weight of the edidence[sic], and was not supported by sufficent[sic] evidence.

*Id*.  On September 24, 2013, Respondent filed a return of writ.  ECF Dkt. #8.  On February

18, 2014, Petitioner filed a traverse. ECF Dkt. #14. On February 19, 2014, Respondent filed an objection to Petitioner's traverse, asserting that Petitioner presented new matters in his traverse that he did not present in his federal habeas corpus petition and requesting that the Court not consider these new matters. ECF Dkt. #15.

## IV. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a

-6-

constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last

-7-

explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of

-8-

jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986). A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Id*.

Simply stated, a federal court may review federal claims:

-9-

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## **V.     STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

-10-

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A. Decisions of lower federal courts may not be considered.
>
> B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C. The state court decision may be overturned only if:
>
>> 1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;
>>
>> 2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or
>>
>> 3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or
>>
>> 4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'
>
> D. Throughout this analysis the federal court may not merely apply its

> E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

> own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI.    LAW AND ANALYSIS

### A.    Manifest Weight of the Evidence

In the first part of his sole ground for relief, Petitioner asserts that his conviction for kidnapping is against the manifest weight of the evidence. ECF Dkt. #1 at 5. Respondent correctly asserts that this claim is not cognizable in federal habeas corpus review.

A claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review. *Chisholm v. Turner*, No. 5:13CV976, 2014 WL 3349591, at *4-*5 (N.D. Ohio July 8, 2014). It is not cognizable before this Court because "[a] 'manifest weight of evidence' claim which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only." *Ladd v. Tibbals,* No. 5:11-cv-173, 2012 WL 5364242, at *7 (N.D. Ohio, Sept. 11, 2012), unpublished, Report and Recommendation adopted by 2012 WL 5364406 (N.D. Ohio, Oct. 30, 2012); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1998)). Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

Accordingly, the undersigned recommends that the Court decline to review this part of Petitioner's first ground for relief because it lacks cognizability.

### B. Sufficiency of the Evidence

Petitioner also asserts in his sole ground for relief that sufficient evidence does not support his kidnapping conviction. ECF Dkt. #1 at 5. The undersigned recommends that the Court find that Petitioner has procedurally defaulted this part of his ground for relief and he fails to demonstrate sufficient cause or prejudice for his procedural default. He also fails to establish a fundamental miscarriage of justice to otherwise excuse his procedural default. Moreover, even if the Court would choose to consider the merits of the claim, the undersigned recommends that the Court find that the Ohio appellate court's determination that sufficient evidence existed to support the kidnapping conviction is not contrary to or an unreasonable application of United

-13-

States Supreme Court precedent.

The undersigned first notes that Petitioner raised his insufficiency of the evidence assertion before the Ohio appellate court. ECF Dkt. #8-5 at 3-6.  However, Petitioner failed to timely appeal the Ohio appellate court decision to the Supreme Court of Ohio.  The Ohio appellate court decision was journalized on January 30, 2012 and Petitioner filed a motion for leave in which to file a delayed appeal on April 9, 2012.  ECF Dkt. #8-9 at 1-3.  Petitioner explained that he was unable to timely file his appeal because of prison overcrowding and his inability to access the prison law library.  *Id.* at 2.  The Supreme Court denied Petitioner's motion for leave to file a delayed appeal.  ECF Dkt. #8-10.  The undersigned recommends that the Court find that the first prong of the *Maupin* procedural default test is met because Petitioner failed to comply with the applicable procedural rules of the Ohio Supreme Court.  Rule II, Section 2(A)(1)(a) of the Rules of Practice for the Ohio Supreme Court requires a party to file a notice of appeal with the Ohio Supreme Court within forty-five days of the entry of judgment from which he is appealing.  Ohio S.Ct. Prac. R. II, § 2(A)(1)(a).  There is no indication in the record that Petitioner filed such a notice.  Therefore, he has failed to comply with a procedural rule.

The second *Maupin* factor is satisfied because the Ohio Supreme Court did indeed enforce the procedural bar by denying Petitioner's motion for a delayed appeal.  ECF Dkt. #8-10.

The third factor is also met because the Supreme Court's denial of Petitioner's motion for a delayed appeal constitutes a procedural ruling that bars federal review of the merits of the petition. "By its very nature, a denial of a motion for leave to file a delayed appeal is a denial solely on procedural grounds even if the court does not expressly cite the procedural bar in its denial. Second, courts have held that a denial of a request for a delayed appeal is a procedural default without merits review." *Barkley v. Konteh*, 240 F.Supp.2d 708, 712 (N.D. Ohio 2002)(citations omitted); see also *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir.2004).  Accordingly, the denial of Petitioner's motion for delayed appeal is an adequate and independent ground to foreclose review of the merits of his petition in the federal habeas court.  *Id.*

-14-

Since prongs one, two and three of *Maupin* are met, the Court should bar review of this part of Petitioner's ground for relief unless he can show cause for his default and prejudice resulting from the constitutional violation.

In his traverse, Petitioner reiterates that he was unable to access the prison law library and was therefore unable to timely file his notice of appeal to the Supreme Court of Ohio. ECF Dkt. #14 at 3-4. He asserts that the prison law library was periodically shut down and he was unable to timely file his notice of appeal. *Id.* at 4. A very similar reason to that advanced by Petitioner has been squarely addressed and rejected by the Sixth Circuit. See *Bonilla*, 370 F.3d at 498 ("the fact that Bonilla's time in the prison law library was limited to four hours per week was insufficient to establish cause to excuse his procedural default. Additionally, Bonilla does not indicate why he required additional time to conduct legal research and how his limited law library time prevented him from filing a timely notice of appeal."). Petitioner in this case fails to explain how or why limitations on his access to the prison law library actually prevented him from timely filing a notice of appeal. Accordingly, the undersigned recommends that the Court find that Petitioner has not established cause for failing to comply with the state's filing requirements.

Since Petitioner has failed to establish cause, the undersigned recommends that the Court find that it is unnecessary to determine whether he was prejudiced by the Supreme Court of Ohio's decision. See *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Moreover, the undersigned fails to find that a fundamental miscarriage of justice would occur if Petitioner's claim is not considered by the Court.

Nevertheless, even if the Court excuses Petitioner's procedural default or otherwise desires to review his sufficiency of the evidence claim, the undersigned offers the following law and analysis. An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890

-15-

(1979), *and In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319.  When reviewing the sufficiency of the evidence, a habeas court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).  Moreover, the inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  In determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson*.  *See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient evidence exists with which to convict, the inquiry ends.  *Id.*  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.  This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).   A District Court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), and *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir. 1983).

The Ohio appellate court in this case cited to *Jackson* in determining the proper standard of review for a sufficiency of the evidence claim.  ECF Dkt. #8-7 at 7.  The appellate court set forth the requirements for a kidnapping conviction under section 2905.01(A)(3) of the Ohio

-16-

Revised Code, applied the *Jackson* standard, reviewed Ms. Shollenberger's testimony, and concluded that the state met its burden of proving each element of the crime of kidnapping beyond a reasonable doubt.  ECF Dkt. #8-8 at 10-11.  The undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of federal law.

As set forth by the Ohio appellate court, Ohio Revised Code section 2905.01(A)(3) provides in relevant part that "[n]o person, by force, threat, or deception...shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (3) to terrorize, or to inflict serious physical harm on the victim or another."  Ohio Rev. Code § 2905.01(A)(3).  Also as cited by the Ohio appellate court, Ms. Shollenberger testified at trial that she and Petitioner were having consensual sex in her upstairs apartment after a Labor Day party when she told him to stop and Petitioner became upset and told her that she did not like him or want to have sex with him but would rather have sex with a man that she spoke to at a store where they had stopped earlier.  ECF Dkt. #8-20 at 163-164.  She testified that the argument escalated with both of them hollering and Petitioner hit her in the face and pushed her against the wall.  *Id.* at 165.  Ms. Shollenberger testified that she tried to get out of the bedroom but Petitioner grabbed her purse out of her hand and started hitting her with it and would not let her walk out of the room.  *Id.* at 165-166.  She testified that when he would not let her leave the room, she scratched him and tried to push him back, but he just became angrier.  *Id.*  She testified that she ran into the bathroom with her phone to call 911 and get away, but he kicked the bathroom door in, punched her, kicked her and grabbed her by her hair and kept hitting her.  *Id.* at 166-167.  She testified that as soon as 911 answered her call, he broke her phone.  *Id.* at 167.  The 911 call was played for the jury.  *Id.* at 167-168.  Ms. Shollenberger further testified that Petitioner continued to hit her and he started wiping her face off because there was blood everywhere and he knew that she had called the police.  *Id.* at 168-169.  He then shut the windows and told her that he would kill her if the police came up to her apartment and he had to go to jail.  *Id.* at 169.

Ms. Shollenberger further testified that she tried to run out of her apartment and as she got down the first flight of stairs to the downstairs apartment, Petitioner pushed her down the rest of the stairs, kept punching her, grabbed her by the hair, and made her go back upstairs. ECF Dkt. #8-20 at 168-169.  She stated that he also kicked her in the face several times. *Id*. at 169.  She testified that he kept hitting her and threatened that he was going to break her jaw and kill her children. *Id*. at 170.  When she was finally able to make it downstairs to a neighbor's apartment, the neighbor called 911. *Id*. at 174.  The 911 tape was played to the jury. *Id*.

The neighbor, Petitioner's cousin, testified that he heard a thud from upstairs, like Ms. Shollenberger had rolled down the stairs or slipped, and when he opened his door, Ms. Shollenberger came bursting in and he made his children leave the room because her face was so beaten. ECF Dkt. #8-20 at 208-209.  He indicated that he went out to talk to Petitioner and Petitioner told him that there was an altercation and Ms. Shollenberger had disrespected him earlier in the day. *Id*. at 210.  He testified that he told Petitioner to leave because Ms. Shollenberger looked bad and Petitioner would get into more trouble if he did not leave. *Id*. at 210-211.  Petitioner's cousin testified that Ms. Shollenberger opened his door back up and he saw that Petitioner was there and hit her twice in the face and she tumbled down the cousin's stairs. *Id*. at 218-219.  He also related that Ms. Shollenberger kept blacking out while he and his girlfriend were talking to her. *Id*. at 211.

Ms. Shollenberger was taken to the hospital and had a broken eye socket, a broken nose and lacerations that required stitches. ECF Dkt. #8-20 at 179.  The medical records were admitted into evidence. ECF Dkt. #8-21 at 248.  A nurse who treated Ms. Shollenberger testified that Ms. Shollenberger reported her pain level at a 10 of 10 which was "really horrible pain." ECF Dkt. #8-20 at 249-250.  Ms. Shollenberger was prescribed Morphine for her intense pain. *Id.* at 251.

Police officers who arrived at the scene also testified.  City of Canton Police Officer Ankrom testified that he responded to the call about Ms. Shollenberger and upon his arrival, Ms. Shollenberger told him that Petitioner assaulted her, stole her keys, and attempted to steal her car.

ECF Dkt. #8-21 at 8-9.  He proceeded into Ms. Shollenberger's apartment and observed blood spatters in the bathroom area, the broken cell phone and he noted that the house looked torn apart.  *Id.* at 10-11.

Based upon the testimony presented at trial, and considering the evidence in the light most favorable to the prosecution, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent or the facts of record as any rational trier of fact could have found the essential elements of the kidnapping charge proven beyond a reasonable doubt.

## VII.     PETITIONER'S TRAVERSE

In his traverse, Petitioner addresses the procedural default issue raised by Respondent as to his delayed and rejected filing before the Supreme Court of Ohio.  ECF Dkt. #14.  He also raises two issues that Respondent objects to as new matters that Petitioner had not raised before. ECF Dkt. #15.

Petitioner discusses his Rule 26(B) application and he asserts that he raised the issues of due process and the ineffectiveness of counsel but improperly labeled them as manifest weight of the evidence issues.  ECF Dkt. #14 at 1.  He cites to the pro se liberal pleading standard allowed by the Court and asserts that these issues should be addressed because he gave the Ohio appellate court and the Supreme Court of Ohio the opportunity to review the merits of these issues.  *Id.*

Respondent asserts that the Court should not considered these issues because he never raised them in his federal habeas corpus petition, but rather, raised them for the first time in his traverse.  ECF Dkt. #15 at 1-2.

The undersigned agrees with Respondent.  "A district court may decline to review a claim that a party raises for the first time in his traverse."  *See Murphy v. Ohio*, 551 F.3d 485, 505 n.4 (6th Cir. 2009), citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *see also Allsup v. Sheldon*, No. 3:11CV2210, 2013 WL 3200641, at *4 (N.D. Ohio, June 24, 2013).  In this case, Petitioner did not clarify in his federal habeas corpus petition that his manifest weight of the

-19-

evidence ground for relief had anything to do with a separate due process issue or an ineffective assistance of counsel issue.  ECF Dkt. #1.  Rather, a review of his instant petition and his Ohio appellate court filings shows that his manifest weight of the evidence assertion was clearly related to an alleged lack of evidence to support his kidnapping conviction.  Accordingly, the undersigned recommends that the Court decline to address this new claim that Petitioner raised for the first time in his traverse.

### VIII. PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING

As a consequence of the undersigned's Report and Recommendation recommending that the Court dismiss Petitioner's federal habeas corpus petition with prejudice, the undersigned recommends that the Court DENY AS MOOT Petitioner's request for an evidentiary hearing that was previously held in abeyance by the Court.  *See* ECF Dkt. #s 9, 20.

### IX. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant federal habeas corpus petition in its entirety with prejudice.


DATE:   October 31, 2014                    */s/ George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).